(117 So. 191)

### N. L. PIERCE NAT. DETECTIVE AGENCY v. PIERCE DETECTIVE AGENCY.
### (7 Div. 751.)

Supreme Court of Alabama. May 24, 1928.

I. Trade-marks and trade-names and unfair competition ☞70(3)—Injury to establish business by employment of similar trade-name may be prevented by injunction.

Injury to established business by the employment of a trade-name so similar as to take advantage of the good will of the former, and divert business resulting therefrom to a new concern, may be prevented by injunction.

2. Trade-marks and trade-names and unfair competition ☞69—Actual intent to defraud need not appear to authorize injunction against employment of trade-name similar to that of established business.

In order to authorize injunction against employment of trade-name similar to that of established business, an actual intent to defraud need not appear, it being sufficient if facts pleaded and proven disclose such deceptive name and conduct of business as to work a fraud, diverting business coming through the prestige and good will of another.

3. Trade-marks and trade-names and unfair competition ☞73(1)—Use of family name in business is personal right.

The use of the family name in one's business is generally recognized as a personal right.

4. Trade-marks and trade-names and unfair competition ☞73(1)—Coupling family name with trade-name so as to designedly infringe on trade-name of another constitutes fraud.

The use of the family name in one's business is subject to general maxim "sic utere tuo," etc., and coupling family name with trade-name so as to designedly infringe on the trade-name of another, which can readily be avoided without abandonment of the family name, is a fraud not to be sanctioned in equity.

5. Trade-marks and trade-names and unfair competition ☞97—Injunction against use of similar trade-name held properly denied, where complainant before hearing had withdrawn from field involved.

Where, at time of hearing on bill to enjoin unfair competition in use of trade-name, complainant had withdrawn from field wherein name was used, and entirely abandoned such field, injunction was properly denied, since no monopoly of name can be claimed when there is no competing business to be protected, and injunction under such conditions would merely injure respondent and the public without any compensating advantage.

6. Injunction ☞4—Injunction operates prospectively.

An injunction operates prospectively for future protection only.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Bill for injunction by the N. L. Pierce National Detective Agency against the Pierce Detective Agency. From a decree dismissing the bill, complainant appeals. Affirmed.

L. B. Rainey, of Gadsden, for appellant.

Under the testimony in this case there is a clear case of unfair competition and infringement, and the court erred in decreeing in favor of defendant. Epperson & Co. v. Bluthenthal, 149 Ala. 125, 42 So. 863, 13 Ann. Cas. 832; Boston Shoe Shop v. McBroom, 196 Ala. 262, 72 So. 102; Kyle v. Perfection Mattress Co., 127 Ala. 39, 28 So. 545, 50 L. R. A. 628, 85 Am. St. Rep. 78; 38 Cyc. 680, 756.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O. R. Hood, of Gadsden, for appellee.

An individual may use his own name in his business, even though he may thereby interfere or injure the business of another person of the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical or do anything calculated to mislead. 26 R. C. L. 855. The authorities cited by appellant are inapt.

BOULDIN, J. The bill is to enjoin alleged unfair competition in the use of a trade-name so similar to that of complainant as to lead to confusion and divert the good will of an established business to the profit of respondent, with consequent injury to the business of complainant.

About June 1, 1922, complainant, "N. L. Pierce National Detective Agency," was incorporated with main office in the city of Birmingham. N. L. Pierce, who had some prior experience in that line of business, organized the corporation, and became chief stockholder and manager. So far as here involved, it may be regarded as his business operated in a corporate name. The business included protection, investigation, and commercial lines of national detective agencies.

About February 1, 1923, a branch office and agency was established at Gadsden. B. W. Pierce, brother of N. L. Pierce, then residing in Gadsden, was made manager or superintendent of the branch office.

About September 10, 1923, B. W. Pierce ceased to be branch manager, and went into the insurance business, but continued his connection with complainant as salesman of contracts for protection and service to the business concerns of Gadsden.

About February 1, 1924, B. W. Pierce entirely discontinued his connection with complainant, and set up a local detective business of his own in Gadsden and vicinity. This business was incorporated under the name of "the Pierce Detective Agency." The bill was filed September 16, 1924.

The litigation, essentially one between Leonard Pierce on the one hand and Benton Pierce on the other, resulted in a decree for respondent January 12, 1927. The cause was submitted to this court on appeal January 17, 1928.

[1] The remedy by injunction to prevent injury to an established business by the employment of a trade-name so similar as to take advantage of the good will of the former, and divert business resulting therefrom to the new concern, is well established and defined in the former decisions of this court. Kyle v. Perfection Mattress Co., 127 Ala. 39, 28 So. 545, 50 L. R. A. 628, 85 Am. St. Rep. 78; Epperson v. Bluthenthal, 149 Ala. 125, 42 So. 863, 13 Ann. Cas. 832; White v. Citizens Light & Power Co., 172 Ala. 232, 55 So. 193; Grand Lodge, etc., v. Grand Lodge, etc., 174 Ala. 395, 56 So. 963; Boston Shoe Shop v. McBroom Shoe Shop, 196 Ala. 262, 72 So. 102; G. B. McVay & Son Seed Co. v. McVay Seed & Floral Co., 201 Ala. 644, 79 So. 116; Harrison Transfer Co. v. Harris Transfer & Warehouse Co., 208 Ala. 631, 95 So. 12.

[2] The real basis of relief is fraud and irreparable injury. An actual intent to defraud need not appear. Sufficient if the facts pleaded and proven disclose such deceptive name and conduct of business as to work a fraud, diverting business coming through the prestige and good will of another.

[3] The use of the family name in one's business is generally recognized as a personal right. In modern business, carrying the family name in a corporate enterprise is usually considered of the same class. Note to Seligman v. Fenton, 47 A. L. R. 1190; Burns v. Wm. J. Burns International Detective Agency, 235 Mass. 553, 127 N. E. 334.

However, under our statute, a corporate name should not be taken so nearly similar to that of an existing corporation as to lead to confusion and uncertainty. This statute qualifies in some measure the prevailing rule in the absence of statute. Harrison Transfer Co. v. Harris Transfer & Warehouse Co., 208 Ala. 631, 95 So. 12.

[4] In any event, the use of a family name is subject to the general maxim, "sic utere tuo," etc. So coupling the family name with a trade-name as to designedly infringe upon the trade-name of another, which could readily be avoided without abandonment of the family name, is a fraud not to be sanctioned in equity. G. B. McVay & Son Seed Co. v. McVay Seed & Floral Co., supra.

In dealing with corporate names wherein the family name is carried by both, the law of corporations as well as the law relating to trade-marks, trade-names, and unfair competition furnishes a vast number of precedents. 14 C. J. p. 310 et seq., § 374, with illustrations in notes 23 and 24.

The application of sound principle to a given case is not always free from much difficulty. Much depends upon the facts of the particular case. There are cases where the name is such as to naturally and inevitably result in infringement upon the rights of another. In such case the party must be held to intend the natural result of his acts.

In other cases, the names may be similar in carrying a family name, but other differences be so marked that the one may by due care be used without substantial injury to the other. In such case honest use of the name, with due care to avoid appropriation of the good will of another, or confusion of business to his substantial injury, may become an issue of fact in an injunction suit. In this case there is much testimony as to similarity of the names as arranged and emphasized on letterheads and advertising matter, similarity of contracts with customers, metal tags, etc., and opposing evidence that in design, color, and subject-matter care was taken to avoid

confusion in all these matters; evidence that both used standard forms of contracts; evidence that both, by conspicuous notices through the press, disclaimed any connection with each other; evidence tending to show that customers did know the two concerns and chose between them; some evidence that complainant, "N. L. Pierce National Detective Agency," was sometimes addressed through the mails, mainly to the Birmingham office, as the Pierce Detective Agency; and counter evidence that in no case was mail to the Gadsden office intended for complainant, received by respondent.

We do not find it necessary to pass upon all these issues of fact. The decree of the court was justified upon the grounds now to be stated:

[5] N. L. Pierce, testifying in his own behalf, said:

"We knew in advance, and know now, that a branch office in as small a town as Gadsden would be a losing proposition from a financial standpoint, but we opened an office here to give him a position, hoping it would be self-sustaining or at least pay him a salary. After we got established we had contracts out and kept our doors open in good faith. We have lost money ever since the doors were opened. I did not want to quit because for fear it would reflect on our home office. We instructed our superintendent to not solicit business in Gadsden territory, which they have not. We have not written a dollar contract since that time, and don't expect to. We invite this competition; we so advertise, except for future business; we dont care what name he goes under; we will contribute money and means to help him; and will throw everything his way except the name the Pierce Detective Agency. * * * It is not from a monetary standpoint the suit is here at all."

This evidence was given in May, 1925.

On June 9, 1926, the following amendment to the answer was filed:

"Defendant avers that, since the filing of the bill of complaint in this cause and some three months heretofore, complainant has discontinued its office at Gadsden, and, since the discontinuance thereof, has maintained no office or agent at Gadsden for the transaction of a detective business, and has not since, and is not now attempting to do a detective business in Gadsden and vicinity, and that respondent, as set forth in its answer, only maintains an office at Gadsden and does a detective business in Gadsden and vicinity, and does not attempt to do a detective business at any point where complainant maintains an office or agent in the transaction of such business."

It was agreed in writing that the averments of this amendment are true.

The evidence for respondent was that no complaint was ever made of the use of the name "the Pierce Detective Agency," nor notice given not to do so, until this suit was filed. We find no evidence in denial.

Meantime, it appears respondent had conducted an active business with full knowledge of complainant, wherein contracts were made with customers for future protection and service, and the consideration paid by the several customers; that by 1925 the detective business of Gadsden and vicinity had passed into the hands of respondent; that considerable equipment, including four automobiles, to give quick and efficient service, had been accumulated.

There is no question either under pleadings or proof of any contractual relation between the parties depriving Benton Pierce of the legal right to enter into a competitive business. Any skill or experience gathered by him in the business was his personal acquisition. The good will or prestige, if any, which had come to complainant by his efficiency in the conduct of the business while connected therewith, was its rightful property. He could not lawfully appropriate the business advantage inhering in the name thus acquired. But his personal reputation was his own.

Complainant is committed by his own testimony to the proposition that he never entered into competition with respondent in the local territory of the latter's operations, not because of any wrongful use of a similar name, but out of friendship and brotherly interest; that the field was entirely abandoned before the hearing.

[6] An injunction operates prospectively for future protection. This was the sole relief sought. To grant an injunction under these conditions would merely injure respondent and the public without any compensating advantage to complainant. No monopoly of the name can be claimed where there is no competing business to be protected. Note to Terry v. Cooper, 48 A. L. R. 1257, 1264; Yellow Cab Co. v. Sachs, 191 Cal. 238, 216 P. 33, 28 A. L. R. 105.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.