## CENTAUR CO. v. GENESH et al.

District Court, W. D. Pennsylvania. June 18, 1929.

No. 2274.

Edward S. Rogers, Allen M. Reed, and William T. Woodson, all of Chicago, Ill., and Edward A. Lawrence, of Pittsburgh, Pa., for plaintiff.

I. A. Melnick, of Pittsburgh, Pa., for defendants.

THOMSON, District Judge. This suit is brought to restrain infringement of trade-mark and unfair competition. The product which is the subject of this suit is known as Castoria. Plaintiff was incorporated in 1877, but the product had been manufactured by its predecessor for many years before that date. The distribution of plaintiff's product is nationwide and is a well-known household remedy for infants' ailments. The word "Castoria" is the name used by the public and dealers in designating the plaintiff's remedy, and has acquired a very definite identifying significance. The jurisdiction of the court and the citizenship and residence of the parties are admitted, and it is also admitted by the answer that the trade-mark "Castoria" and the labels and cartons of the plaintiff have been extensively used by it for many years, and are well known to the trade and public. The registrations under the federal statute (15 USCA §§ 1 et seq.) and their ownership by the plaintiff are also admitted.

Paragraph 4 of the bill contains the vital averments in this case, which in substance are as follows:

That defendants are engaged in a joint scheme to infringe the plaintiff's said trademarks, to imitate its distinctive name, labels, and cartons, and to compete unfairly with the plaintiff, and that, in pursuance of the said scheme, each of the defendants has performed, or is about to perform, the following acts:

Genesh ordered from the defendants, composing the partnership of D. J. Rex & Co., the infringing carton, and delivered to the defendants the plates from which the same are to be printed; that defendants are proceeding with the printing, and have the plates in their possession; that there was delivered to them by Genesh, as printer's copy, a specimen of plaintiff's genuine cartons with a few changes indicated thereon; that the Superior Engraving Company made the infringing plates; that the Gleason Printing Company is about to do a part of the printing of labels and cartons, and are designated by Genesh to receive the cartons printed by the defendants composing the partnership of Rex & Co. from the plates made by the said engraving company, and that Stanley M. Bielek, doing business as the Bielek Manufacturing Company, is to manufacture a compound to be placed in bottles inclosed in the infringing labels and cartons, and that all of said defendants are joint participants in said scheme and contributors thereto.

The case is rather extraordinary and anomalous in the fact that these discreditable averments are admitted in the answer. It is further admitted that the proposed product of the defendant is not made of the same ingredients, or in the same proportions, as plaintiff's. It is also admitted that Exhibit C attached to the bill is a photograph of the printer's copy submitted by Genesh for the purpose of having the infringing labels and cartons made, and that Exhibit D attached to the bill is a facsimile of defendants' carton.

On presentation of these facts to the court, a temporary restraining order was issued, and the defendants enjoined from disposing of or otherwise transferring the plates, dies, etc., or transferring any of the cartons or labels printed from the plates.

An order taking the bill pro confesso is entered against all of the defendants except

E. Genesh. The latter has admitted in his answer substantially all of the allegations of the bill, except the averments as to damage. Apparently, the only issue which he raises is the right of the plaintiff in the name "Castoria." He denies that the plaintiff is entitled to the sole and exclusive use of the name "Castoria"; that the employment of said term in connection with any medicinal product made by the defendant is not an imitation and infringement on the rights of the plaintiff, and denies that any damage has resulted to the plaintiff.

A plainer case of intentional and wrongful invasion of the plaintiff's rights could hardly be conceived. The changes made by the defendant were so insignificant, and the appearance between defendants' and plaintiff's carton so similar, that the public would unquestionably be deceived. As was said by Justice Holmes in Jacobs v. Beecham, 221 U. S. 263, 31 S. Ct. 555, 55 L. Ed. 729: "When the defendant has to justify using the plaintiff's trade-name, the burden is on him." The word "Castoria" is a valid trade-mark. It is merely an arbitrary word having no particular significance, and is inherently capable of exclusive appropriation as a trade-mark. It is not even in, the lexicons, and describes nothing, but by long association it has come to designate the product of the plaintiff. The use of this word under the circumstances disclosed by the evidence is presumptively an infringement and fraudulent, and for the purpose of passing off the goods of the infringer as the goods of the user of the trade-mark.

In Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co. (C. C.) 11 F. 495, Judge Lowell said: "The reason why artificial trade-marks are absolutely protected, without inquiry into motives, etc., is that the defendant has no natural right to such a symbol, and has the whole world of nature from which to choose his own."

To the same general effect is the language of the Circuit Court of the Third Circuit in Gulden v. Chance, 182 F. 303. I need not elaborate on the authorities, as the case on principle is perfectly plain. The only possible question about the present trade-mark character of the word "Castoria" is raised by certain old cases where the rights in this word were discussed, such as Centaur Co. v. Heinsfurter (C. C. A.) 84 F. 955, and Centaur Co. v. Killenberger (C. C.) 87 F. 725, and perhaps others, but these cases must be interpreted by the facts as they were presented.

In the Heinsfurter Case it was held that the expiration of the patent to Samuel Pitcher dedicated the name "Castoria" to the public; the assumption being that the product sold under the name "Castoria" by the plaintiff was the product of the Pitcher patent. The cases which followed seem to accept the Heinsfurter Case without question by assuming apparently that Castoria was a patented product, that the patent had expired, and that the name thereafter belonged to the public. Those cases assumed apparently, that the plaintiff and defendants were both manufacturing the product of the expired patent. On that hypothesis, the conclusion in those cases naturally followed. But here the record shows conclusively that Castoria, as manufactured by the plaintiff for over 50 years, is not, and never was, the product of the expired Pitcher patent. The product disclosed in it is described as a "cathartic or substitute for castor oil." It is not questioned that what the defendant in this case is selling as Castoria is neither the product of the Pitcher patent nor the product sold by the plaintiff, but something different from either. This is made clear by a comparison of the ingredients of the three formulas. It becomes clear, therefore, that, to the extent that the earlier cases assumed that the word "Castoria" is not a valid trade-mark, they are not binding or conclusive in the case before us. Every case must be decided on its own circumstances. In the case before us, the defendant has concluded himself by his fraudulent conduct. Even if his intentions had been honest in his endeavor to appropriate the name "Castoria," under the facts of the case I think he could not have escaped infringement, but certainly the court, in view of defendant's fraud, will not trust him in the use of the word "Castoria." The facts of the case would, seem to demand that he should be enjoined completely from its use.

Plaintiff is entitled to the relief prayed for, and a decree may be drawn accordingly.